ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
MEGHAN E. FENZEL (CSB No. 324139)
mfenzel@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MON CHERI BRIDALS, LLC and MAGGIE SOTTERO DESIGNS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CLOUDFLARE, INC., a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendant. | Case No.: 2:18-cv-09453-MWF-AS <br><br> **DEFENDANT CLOUDFLARE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** <br><br> Date:      March 4, 2019 <br> Time:      10:00 a.m. <br> Ctrm.:     5A <br> Judge:     Hon. Michael W. Fitzgerald |

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................. 1

II. FACTUAL BACKGROUND .................................................................. 2

III. THE COMPLAINT AND ITS ALLEGATIONS ............................................ 4

IV. ARGUMENT ....................................................................................... 5

    A. The Plaintiffs Fail to Allege Facts Sufficient to Claim Contributory Infringement by Cloudflare. .......................................... 6

        1. The Standard for Contributory Infringement. ............................ 6

        2. The Plaintiffs Fail to Plead That Cloudflare's Service Is Incapable of Substantial Noninfringing Use. ....................... 8

        3. The Plaintiffs Fail to Plead Facts Showing That Cloudflare Has Actively Induced Infringement by Alleged Direct Infringers. ......................................................... 9

            a. The Plaintiffs' Allegations of So-Called "Constructive Knowledge" Fail to State a Claim. .................................................................... 9

            b. The Plaintiffs' Allegations Concerning the DMCA's Safe Harbor Provisions Are Irrelevant to Contributory Infringement. ....................... 11

    B. The Plaintiffs Fail to Allege Any Underlying Direct Infringement, and They Allege Facts That May Be Inconsistent with It. ................................................................. 13

        1. The Complaint Fails to Allege Facts Sufficient to Support a Direct Copyright Infringement Claim. ................... 14

        2. The Complaint Fails to Plead Plausibly and Clearly That the Plaintiffs' Claim Pertains to Enforceable Copyrights. ................................................................. 15

V. CONCLUSION .................................................................................. 17

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ................................................................. 14, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 5, 6, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 5, 6

*Berwick v. New World Network Int'l, Ltd.*,
No. 06 Civ. 2641 (JGK), 2007 WL 949767 (S.D.N.Y. Mar. 28,
2007) ............................................................................................................ 10

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
881 F.3d 293 (4th Cir. 2018) ...................................................................... 10

*Cobbler Nevada, LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018) ......................................................... 1, 7, 8, 9

*CoStar Grp. Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ...................................................................... 12

*Disney Enters., Inc. v. Redbox Automated Retail, LLC*,
No. CV 17-08655 ........................................................................................ 16

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........................................................................ 6

*Elastic Wonder, Inc. v. Posey*,
179 F. Supp. 3d 307 (S.D.N.Y. 2016) ......................................................... 15

*In re Aimster Copyright Litig.*,
334 F.3d 643 (7th Cir. 2003) ...................................................................... 11

*Luvdarts LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) .................................................................... 11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ............................................................................*passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Omega S.A. v. Costco Wholesale Corp.*,
     776 F.3d 692 (9th Cir. 2015) ................................................................ 16

*Perfect 10, Inc. v. Amazon.com, Inc.*,
     508 F.3d 1146 (9th Cir. 2007) ........................................... 8, 10, 12, 14

*Perfect 10, Inc. v. CCBill LLC*,
     488 F.3d 1102 (9th Cir. 2007) ............................................................ 12

*Perfect 10, Inc. v. Giganews, Inc.*,
     847 F.3d 657 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017) ............ 14

*Religious Tech. Ctr. v. Netcom On–Line Commc'n Servs., Inc.*,
     907 F. Supp. 1361 (N.D. Cal. 1995) .............................................. 13, 14

*Rosemond v. United States*,
     572 U.S. 65 (2014) ............................................................................... 11

*Somers v. Apple, Inc.*,
     729 F.3d 953 (9th Cir. 2013) ................................................................. 5

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
     464 U.S. 417 (1984) ................................................................... 7, 8, 10

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
     137 S. Ct. 1002 (2017) ......................................................................... 16

STATUTES

17 U.S.C. § 101 ............................................................................................ 15

17 U.S.C. § 102(a)(5) .................................................................................. 15

17 U.S.C. § 106 ............................................................................................ 14

17 U.S.C. § 113(c) ....................................................................................... 16

17 U.S.C. § 512(b) ................................................................................. 12, 13

17 U.S.C. § 512(c) ................................................................................. 12, 13

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

17 U.S.C. § 512(b)(2)(E)(ii) ...................................................... 13

17 U.S.C. § 512(*l*) ...................................................................... 12

Digital Millennium Copyright Act, 17 U.S.C. § 512 ........................................*passim*

Fenwick & West LLP
Attorneys at Law

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should dismiss the action with prejudice because the plaintiffs have not alleged, and cannot allege, facts sufficient to state a claim against Defendant Cloudflare, Inc.

## I.   INTRODUCTION

Cloudflare provides Internet security and traffic optimization services, on both a free and a paid basis, to major financial institutions, universities, entertainment companies, retailers and other e-commerce companies, governments, and political campaigns.  Cloudflare's customers include the Library of Congress and the United States Copyright Office; NASDAQ and Cisco; and dissident websites that challenge authoritarian regimes.  Cloudflare protects over 12 million web properties and 2.5 billion users ever month, handling approximately 10 percent of global Internet requests.

The plaintiffs are two wedding dress manufacturers and wholesalers who complain about counterfeits and knockoffs on the Internet.  They take credit for numerous successful lawsuits they have brought against websites that market the knockoffs of their dresses.  Now they sue Cloudflare for contributory copyright infringement, relying on a theory akin to negligence, for Cloudflare's failure to terminate service to third-party web sites that the plaintiffs accuse of violating their rights.  The complaint alleges no active misconduct by Cloudflare.

The Court should dismiss this action for several reasons.  First, the plaintiffs have not alleged facts that meet the standard for contributory infringement in the Supreme Court's landmark case *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, (2005), and the Ninth Circuit's most recent restatement of its jurisprudence in *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018).  The plaintiffs have not alleged that Cloudflare's service is so devoted to infringement that it is incapable of substantial non-infringing use.  Nor can the plaintiffs cure that defect by amendment:  plaintiff Maggie Sottero Designs *is a*

1   *Cloudflare customer.*  Second, the plaintiffs cannot allege, or ever show, that

2   Cloudflare has actively and intentionally encouraged its customers, by clear

3   expression or other affirmative steps, to infringe upon the plaintiffs' copyrights.  No

4   facts exist to support such a claim.  For that reason, the plaintiffs allege only

5   Cloudflare's passivity in failing to terminate customers whom the plaintiffs accuse

6   of being infringers.  They cannot state a viable claim because the alleged inaction

7   does not suffice to create contributory infringement liability.

8   The Court has additional grounds to dismiss the action because the plaintiffs

9   have not sufficiently alleged any underlying direct infringements for which the

10  plaintiffs claim Cloudflare is responsible.  Although that is typically a threshold

11  element, Cloudflare will address that issue at the end.

12  The plaintiffs' invocation of the Digital Millennium Copyright Act, 17

13  U.S.C. § 512, has no bearing on the contributory infringement claim for two

14  reasons.  First, the DMCA is relevant only as providing a *remedies limitation after*

15  a determination of liability.  There is no basis for Cloudflare's liability to begin

16  with. Second, the plaintiffs ground their irrelevant DMCA argument on a fatal error

17  in their notifications of claimed infringement:  they had in mind the wrong

18  subsection of the DMCA, applicable only to hosting providers, instead of the

19  subsection that applies to system caching providers like Cloudflare.  They therefore

20  failed to provide in the notifications additional elements that were necessary for

21  Cloudflare.  The plaintiffs cannot cure these defects in an amended pleading.

22  For all these reasons, the Court should dismiss the action with prejudice.

23  **II.    FACTUAL BACKGROUND[1]**

24  To provide its security and website optimization services, Cloudflare

25  operates a pass-through network that sits between the origin or "host" server of a

26  website and the equipment (such as computers or mobile devices) of persons

27  ───────────────

28  [1] Cloudflare does not rely upon facts outside the complaint in this motion but
    provides this factual background to orient the Court to the context.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  (Internet users) wanting to access that website.  Cloudflare's automated processes

2  analyze traffic and check for harmful transmissions, such as distributed denial of

3  service (DDoS) attacks, bots, and other malware such as viruses or worms that may

4  incapacitate networks, harm computers, or steal data or information.  If Cloudflare

5  detects a threat in the traffic, it blocks the traffic before it can reach its destination

6  and cause damage.  If Cloudflare does not detect a threat, it will relay traffic on to

7  and from the website and back to a website's user. On occasion, for web pages and

8  other resources that draw frequent requests, Cloudflare will maintain some

9  materials from a customer's server for a short period of time in a "cache," often

10  shortening the distance between the user and the material and reducing transmission

11  burdens to improve network performance.  Cloudflare also provides a domain name

12  look-up service (DNS) that allows computers to match domain names to IP

13  addresses to locate, and direct traffic to, resources across the Internet.  To support

14  these services, Cloudflare operates one of the largest content delivery networks (or

15  CDNs) on the Internet. Its technology routes Internet traffic through over 155 data

16  centers around the world.

17  Cloudflare neither operates its customers' websites nor "hosts" them by

18  providing them homes on the Internet.  Cloudflare has no control over the material

19  its customers put on their websites or over the websites' presence on the Internet.

20  To use Cloudflare, a customer must already have an existing website with its own

21  Internet hosting and transmission facilities or services.  The customer must also

22  have its own domain registrar.

23  While Cloudflare's services protect websites and optimize network

24  performance and traffic, they are not essential to a website's operation.

25  Termination of Cloudflare's service for a website does not change what materials

26  appear on the site or whether the site remains accessible over the Internet from the

27  host server.  Termination of service to a website would remove Cloudflare's

28  protection of the site against security threats and would allow users to access the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   website directly from the hosting provider. That could make the website, or

2   persons who wish to access it, vulnerable to malicious cyberattacks.

3   **III.   THE COMPLAINT AND ITS ALLEGATIONS**

4       Plaintiffs Mon Cheri Bridals and Maggie Sottero Designs sell dresses for

5   weddings and social occasions. Dkt. 1, Complaint ¶¶ 9, 12. The plaintiffs claim to

6   own copyrights in their dress designs (Complaint ¶ 9), and in photographic images

7   of their dress designs (*id.* ¶ 10). The complaint includes copyright registrations for

8   only the photographs. *See* Dkt. 1-1, Exhibit A.

9       While the plaintiffs discuss alleged infringement of their copyrighted images

10  (Complaint ¶¶ 12, 31), the bulk of the complaint complains about the problem of

11  "counterfeiting" and sale of "knockoff goods" (*id.* ¶¶ 12-20). The plaintiffs allege

12  that they are "the victims of a massive Internet scheme to advertise and sell

13  products using the copyrighted images of their dresses." *Id.* ¶ 12. They base their

14  claim against Cloudflare on the conduct of "rogue," third-party websites that

15  deceive the public "into believing they are buying genuine goods when they are

16  actually buying counterfeits . . . ." *Id.* ¶¶ 13-15. The complaint does not identify

17  the "counterfeit websites"; nor does it identify the persons whom the plaintiffs

18  contend are direct infringers, saying merely that the counterfeiting effort

19  "originat[es] primarily in China." *Id.* ¶ 14. The plaintiffs allege that the

20  counterfeiters "appear to be authorized retailers of genuine formalwear products"

21  and are difficult to detect because "[t]he merchants often perpetuate the illusion that

22  these websites are operated by or under the authority of legitimate

23  manufacturers . . . ." *Id.* ¶¶ 14-15.

24      While the apparent dispute here is with these so-called counterfeit websites,

25  the plaintiffs have sued Cloudflare on a single claim of contributory copyright

26  infringement. *See* Complaint ¶¶ 36-38. The complaint does not allege that

27  Cloudflare directly infringed any copyrighted works or that Cloudflare hosts any

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

allegedly infringing materials.[2]  The plaintiffs do not allege (and cannot allege) that Cloudflare's service is wholly corrupt and incapable of substantial noninfringing uses (particularly because plaintiff Maggie Sottero Designs, LLC, is a customer of Cloudflare and has been one since 2015).  Nor do the plaintiffs allege any affirmative conduct on the part of Cloudflare to encourage infringement.  Instead, the plaintiffs base their claim on Cloudflare's alleged failure to take "appropriate action" upon receipt of unspecified communications.[3]  *See id.* ¶¶ 32-33.  The complaint alleges that Cloudflare's "liability arises from its failure to terminate the providing of its content delivery services to customers it knows, or has reason to know, is using those services to infringe on the plaintiffs' copyrights."  *Id.* ¶ 1.

The allegations also demonstrate that the plaintiffs and their trade association, American Bridal & Prom Industry Association, Inc. (ABPIA), have not apparently found it difficult to pursue claims directly against "counterfeiters."  The plaintiffs claim that ABPIA has "successfully prosecuted claims against hundreds of websites" that offer "knockoff goods" and that it has "secured default judgments and permanent injunctive relief" that have included "the disabling of over 1,500 websites."  Complaint ¶ 20.

## IV.  ARGUMENT

A plaintiff fails to state a claim "when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Courts apply the plausibility standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint cannot survive a motion

---

[2] The plaintiffs brought no claim of direct copyright infringement in the case, even as to the "Does 1-10"; they are also alleged contributory infringers.

[3] The plaintiffs attach a "sample" of the communications they sent to Cloudflare through a company called Counterfeit Technology.  *See* Dkt. 1-2, Exhibit B.  But Exhibit B contains no indication that it ever went to Cloudflare.  Exhibit B asserts that the recipient hosts the website anagowns.com, but Cloudflare does not provide hosting services and the complaint does not allege that Cloudflare does so.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   to dismiss unless its allegations contain "sufficient factual matter, accepted as true,

2   to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

3   (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a

4   cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

5   556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will

6   not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders

7   'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at

8   678 (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

9   'merely consistent with' a defendant's liability, it 'stops short of the line between

10  possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678

11  (quoting *Twombly*, 550 U.S. at 557); *accord Eclectic Properties E., LLC v. Marcus*

12  *& Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) ("[P]laintiffs must include

13  sufficient factual enhancement to cross the line between possibility and

14  plausibility."). Here, the plaintiffs fail to state a plausible claim of contributory

15  infringement.

FENWICK & WEST LLP
ATTORNEYS AT LAW

16      **A.**   **The Plaintiffs Fail to Allege Facts Sufficient to Claim Contributory**

17              **Infringement by Cloudflare.**

18      Even apart from the plaintiffs' failure to plead adequately underlying direct

19  infringements, which Cloudflare discusses below, they have incurably failed to

20  allege other facts necessary to sustain a claim of contributory copyright

21  infringement.

22              **1.**   **The Standard for Contributory Infringement.**

23      In *Grokster* the U.S. Supreme Court set the standard for contributory

24  copyright infringement liability: "[o]ne infringes contributorily by intentionally

25  inducing or encouraging direct infringement . . . ." 545 U.S. at 930. Within that

26  general standard, the Court identified two categories of liability, which Justice

27  Ginsburg summarized as follows: "Liability under our jurisprudence may be

28  predicated on actively encouraging (or inducing) infringement through specific acts

(as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses."[4]  *Id.* 545 U.S. at 942 (Ginsburg, J., concurring). Thus, to state a contributory infringement claim, a plaintiff must show that the defendant either (1) provides a product or service incapable of substantial noninfringing uses or (2) intentionally and actively induces infringement "by clear expression or other affirmative steps taken to foster infringement."  *Id.*, 545 U.S. at 936-37.  The Court also ruled "mere knowledge of infringing potential or of actual infringing uses would not be enough" to subject a provider to contributory infringement liability.  *Id.*, 545 U.S. at 937.

The Ninth Circuit recently addressed the teaching of *Grokster* in *Cobbler Nevada*, considering whether an operator of a foster care home could be liable for contributory infringement for failing to secure its Internet connection.  901 F.3d at 1145.  The court of appeals ruled that, "without allegations of intentional encouragement or inducement of infringement, an individual's failure to take affirmative steps" to police infringement is "insufficient to state a claim."[5]  *Id.*; *see also Grokster*, 545 U.S. at 939 & n.12 (no contributory infringement liability "merely based on a failure to take affirmative steps to prevent infringement").  In short, alleged inaction does not suffice to create contributory infringement liability.

*Cobbler Nevada* thus applied the "well-settled rule" of *Grokster*:  that "one infringes contributorily by intentionally inducing or encouraging direct

---

[4] *Grokster* built upon the Supreme Court's previous decision on contributory infringement, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).  *Sony* holds that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement" if the product is "capable of substantial noninfringing uses."  *Id.* at 442.

[5] The Ninth Circuit also rejected plaintiff's claim of direct infringement, holding that a person's "status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer." *Cobbler Nevada*, 901 F.3d at 1145.

FENWICK & WEST LLP
ATTORNEYS AT LAW

infringement." *Cobbler Nevada*, 901 F.3d at 1147 (quoting *Amazon.com*, 508 F.3d at 1170, and *Grokster*, 545 U.S. at 930) (alteration omitted).  Consistently with Justice Ginsburg's concurrence in *Grokster*, the Ninth Circuit also discussed the "two strands of liability following *Sony* and *Grokster*." *Cobbler Nevada*, 901 F.3d at 1147.  One is "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses"; the other is "actively encouraging (or inducing) infringement through specific acts." *Id.*  (quoting *Amazon.com*, 508 F.3d at 1170, and *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).  The complaint fails to plead a viable claim in either strand of the doctrine.

### 2.     The Plaintiffs Fail to Plead That Cloudflare's Service Is Incapable of Substantial Noninfringing Use.

The plaintiffs do not allege that Cloudflare's services are incapable of substantial noninfringing uses.  To the contrary, the plaintiffs concede that Cloudflare's services have substantial and commercially significant uses, including content delivery network services, web content optimization services, website security services, DDoS protection services, and managed domain name system (DNS) network services.  *See, e.g.*, Complaint ¶ 22.  The complaint contains no allegation that Cloudflare specially adapts its services for infringement; Cloudflare's services work the same way for any website that uses them, whether those sites contain allegedly infringing materials or not.

Because the complaint fails to allege that Cloudflare's services are incapable of substantial noninfringing use, the plaintiffs do not state a viable contributory infringement claim under this strand of the contributory infringement standard.  Moreover, they cannot do so because Plaintiff Maggie Sottero Designs is itself a Cloudflare customer since 2015.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**3.**    **The Plaintiffs Fail to Plead Facts Showing That Cloudflare Has Actively Induced Infringement by Alleged Direct Infringers.**

The complaint also omits any facts to show that Cloudflare actively induces infringement by clear expression or other affirmative steps to foster infringement. *Compare Grokster*, 545 U.S. at 936-37, *with* Complaint.  Mere threadbare recitals and conclusory statements, like those of the plaintiffs here, do not suffice to state a cause of action.  *Iqbal,* 556 U.S. at 678.

Apart from empty conclusions, the plaintiffs' theory of liability wrongly rests on Cloudflare's alleged *inaction.*  The plaintiffs assert that Cloudflare's "liability arises from its *failure to terminate* the providing of its content delivery services to customers it knows, or has reason to know, is using those services to infringe on Plaintiffs' copyrights."  Complaint ¶ 1 (emphasis added); *see also* Complaint ¶¶ 31-32.  That does not state a claim for contributory infringement.  Only "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."  *Cobbler Nevada*, 901 F.3d at 1148 (quoting *Grokster*, 545 U.S. at 919).  "[I]n the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses."  *Cobbler Nevada*, 901 F.3d at 1148 (quoting *Grokster*, 545 U.S. at 939 n.12).  The plaintiffs' failure to allege any active culpable conduct by Cloudflare is fatal to their claim of contributory infringement.

**a.**    **The Plaintiffs' Allegations of So-Called "Constructive Knowledge" Fail to State a Claim.**

The plaintiffs also misfire by vaguely and inadequately alleging "actual and/or constructive knowledge" of alleged infringement.  Complaint ¶ 36.  The

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

plaintiffs stated that "CloudFlare's [*sic*] liability arises from its failure to terminate the providing of its content delivery services to customers it knows, *or has reason to know*, is using those services to infringe on Plaintiffs' copyrights." *Id.* ¶ 1 (emphasis added).[6]  As an initial matter, the Court ruled "mere knowledge of infringing or of actual infringing uses would not be enough" to subject a provider to contributory infringement liability.  545 U.S. at 937.

More to the point, both the Supreme Court and the Ninth Circuit have rejected a constructive knowledge standard for contributory infringement.  In *Sony* the Court bluntly rejected constructive knowledge as an element of liability so long as a defendant provides a product or service capable of substantial noninfringing use.  It said there is "no precedent in the law of copyright" for imposing secondary liability on an equipment provider based on "constructive knowledge of the fact that their customers may use that equipment to make unauthorized copies of copyrighted material." *Sony*, 464 U.S. at 439 (refusing to impute culpable intent from the characteristics or uses of a distributed product).  In other words, "negligence does not suffice to prove contributory infringement . . . ." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308 (4th Cir. 2018) (holding that jury instruction that included "should have known" knowledge standard was erroneous).  To the contrary, "*Grokster* tells us that contribution to infringement must be intentional for liability to arise." *Amazon.com*, 508 F.3d at 1170.  This rule "premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage

---

[6] Moreover, generic and alternative allegations are not definite enough to allege any fact properly. *See Berwick v. New World Network Int'l, Ltd.*, No. 06 Civ. 2641 (JGK), 2007 WL 949767, at *8 (S.D.N.Y. Mar. 28, 2007) (dismissing complaint for lack of standing, where alternative pleading obscured whether named plaintiff held license) ("This use of 'and/or' is impermissibly indefinite to allege that the named plaintiffs, rather than the non-party JFOC, held a fiber-optics license.").  This sort of alternative allegation does not convey any fact, any more than an allegation that a "defendant stole and/or gazed at the painting" sufficiently alleges theft.

innovation having a lawful promise." *Grokster*, 545 U.S. at 937.  At a minimum, this requires "*actual* knowledge of *specific* acts of infringement." *Luvdarts LLC v. AT&T Mobility, LLC,* 710 F.3d 1068, 1072 (9th Cir. 2013) (emphasis added).

The law of aiding and abetting, "the criminal counterpart to contributory infringement," *In re Aimster Copyright Litig.*, 334 F.3d 643, 651 (7th Cir. 2003), is instructive.  A person "aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission." *Rosemond v. United States*, 572 U.S. 65, 76 (2014) (construing federal aiding and abetting statute).  The requisite intent exists "when a person *actively participates* in a criminal venture *with full knowledge* of the circumstances constituting the charged offense." *Id.* at 77 (emphases added).  This "must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice." *Id.* at 78.  "When an accomplice knows beforehand of a confederate's design" to break the law, "he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid" and abet the offense.  *Id.*

Constructive knowledge allegations have no place in the contributory infringement claim here and cannot assist the plaintiffs in stating a claim.

> **b.      The Plaintiffs' Allegations Concerning the DMCA's
> Safe Harbor Provisions Are Irrelevant to
> Contributory Infringement.**

The plaintiffs try to sidestep the defects in their pleading by invoking the optional safe-harbor remedy-limiting provisions under the Digital Millennium Copyright Act, 17 U.S.C. § 512. *See* Complaint ¶ 1.  While Cloudflare is indeed entitled to safe harbor protection, the plaintiffs have put the cart before the horse: whether the limitation on remedies applies is irrelevant until plaintiffs can adequately plead and prove contributory infringement liability in the first place.  Moreover, as Cloudflare shows below, the plaintiffs have badly mistaken which

FENWICK & WEST LLP
ATTORNEYS AT LAW

safe harbor applies to Cloudflare:  the communications they allege to have sent, under section 512(c), are invalid for service providers like Cloudflare under the relevant provision, 17 U.S.C. § 512(b).

Contributory copyright infringement determinations and the DMCA safe-harbor limitations on remedies raise distinct issues, with different elements and conditions.  *See* 17 U.S.C. § 512(*l*).  "These safe harbors limit liability but do not affect the question of ultimate liability under the various doctrines of direct, vicarious, and contributory liability . . . ."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) (internal citations and quotations omitted).  In other words, the "DMCA has merely added a second step to assessing infringement liability for Internet service providers, *after it is determined whether they are infringers in the first place under the preexisting Copyright Act.*"  *CoStar Grp. Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) (emphasis added).  It "is irrelevant to determining what constitutes a *prima facie* case of copyright infringement."  *Id.*  The safe-harbor allegations therefore are a red herring at the pleadings stage of the case.

Moreover, while the plaintiffs claim that Cloudflare "failed to take the appropriate action required by law in response to these notices," *see* Complaint ¶ 32, the plaintiffs neither offer sufficient facts about any communications nor allege facts showing what "appropriate action" Cloudflare was supposed to take, the failure of which would constitute clear expression or other affirmative steps to foster infringement.[7]  The sample communication the plaintiffs attach as Exhibit B

---

[7] In *Amazon.com* the Ninth Circuit required a showing of a defendant's substantial assistance to infringement plus actual knowledge of specific infringements coupled with a failure to take simple measures to prevent further harm to copyrighted works. 508 F.3d at 1172.  The court of appeals stressed that the *Grokster* standard and its focus on establishing culpable intent was the ultimate touchstone.  *See id.*  Even if Cloudflare had gained actual knowledge of specific infringements, the complaint does not identify any "simple measures" that Cloudflare could take regarding any material passing over its system to prevent further harm to copyrighted works.  No allegations of the complaint show culpable intent.

FENWICK & WEST LLP
ATTORNEYS AT LAW

does not contain any reference to Cloudflare at all; the language suggests that the plaintiffs' agent directed the communication to a *hosting* service, not a provider of pass-through and caching services such as Cloudflare: "please be advised that this message serves as the 4th formal notice under the DMCA *that a website that your company hosts* . . . is illegally duplicating and reproducing at least one copyrighted work . . . ." Dkt. 1-2 (emphasis added). The communication also identifies itself explicitly as a notification "under Section 512(c) . . . ." But Cloudflare is a system caching provider under section 512(b), not a hosting provider under section 512(c), and notifications of claimed infringement under section 512(b) require essential additional information that Exhibit B lacks. *See* 17 U.S.C. § 512(b)(2)(E)(ii) (requiring statement that the source website of the cached material has removed or disabled access to it at the source or that a court has ordered it to do so). The information in Exhibit B is thus irrelevant to Cloudflare. Because the plaintiffs identified Exhibit B as a sample of their communications, they cannot cure a pervasive defect in both their communications and their allegations that rely upon those communications.

Thus, the plaintiffs fail to allege facts of both Cloudflare's actual knowledge of specific infringements and active inducement by clear expression or other affirmative steps by Cloudflare to foster infringements by other persons of the plaintiffs' works. The failures are fatal to the claim of contributory infringement.

**B.    The Plaintiffs Fail to Allege Any Underlying Direct Infringement, and They Allege Facts That May Be Inconsistent with It.**

A copyright plaintiff cannot state a contributory infringement claim without alleging facts showing underlying direct infringement: "[T]here can be no contributory infringement by a defendant without direct infringement by another." *Religious Tech. Ctr. v. Netcom On–Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1371 (N.D. Cal. 1995). No kind of secondary copyright liability "exist[s] in the

FENWICK & WEST LLP
ATTORNEYS AT LAW

absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *accord Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1169 (9th Cir. 2007).

To allege direct infringement, a plaintiff must establish (1) that it owns the allegedly infringed material, and (2) that the alleged direct infringer "violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017) (quoting *Napster*, 239 F.3d at 1013).  In addition, the plaintiff must demonstrate "some element of volition or causation" by the alleged infringer. *Netcom*, 907 F. Supp. 1361, 1370.

### 1.    The Complaint Fails to Allege Facts Sufficient to Support a Direct Copyright Infringement Claim.

The complaint fails to plead any specific instance of direct infringement, and thus the plaintiffs lack a basis for a contributory infringement claim against Cloudflare.  The plaintiffs do not allege that Cloudflare itself directly infringed any of their copyrights; nor do the plaintiffs specify what persons or websites did.  *See generally* Complaint.  The complaint refers to "rogue websites" and "counterfeit websites" generally, *see* Complaint ¶¶ 15, 21, but it neither identifies specific sites nor alleges that Cloudflare contributes to the infringements of specific sites.  The plaintiffs include only one reference to a third-party website that they contend has ever hosted allegedly infringing material, in the sample notification of claimed infringement in Exhibit B, but the complaint does not tie that alleged infringement to Cloudflare and the exhibit does not mention Cloudflare or explain any relation to it.[8]  Dkt. 1-2.  The complaint further fails to identify specific works that each plaintiff alleges was infringed and does not include any of the allegedly infringed or

---

[8] The complaint does not allege infringement of any of Plaintiff Mon Cheri Bridals's copyrighted works.  Meanwhile, Exhibit B to the complaint (Dkt. 1-2) identifies, by URL link, only a single image that Plaintiff Maggie Sottero Designs claims was infringed.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   infringing images as exhibits.  The batch of copyright registrations in Exhibit A

2   (Dkt. 1-1) and the link to the plaintiffs' agent's site (at

3   http://counterfeit.technology/) in Exhibit B (Dkt. 1-2) are not only too broad to be

4   meaningful but also fail to pertain to Cloudflare.  For these reasons the complaint

5   fails to put Cloudflare on notice of the works or the specific infringing conduct that

6   the plaintiffs assert and fails to allege the underlying direct infringement necessary

7   to state a contributory infringement claim.

8           **2.       The Complaint Fails to Plead Plausibly and Clearly That the**

9                  **Plaintiffs' Claim Pertains to Enforceable Copyrights.**

10          It is not clear from the complaint whether the plaintiffs' wedding dresses or

11   images are really at issue.  *See* Complaint ¶¶ 36-38.  While the plaintiffs give lip

12   service to image copyrights *see* Complaint ¶¶ 12, 31, the thrust of the complaint

13   concerns "counterfeiting" or "knockoff goods" on the Internet.  *See id.* ¶¶ 12-20.

14          The plaintiffs' ambivalence between images and wedding dresses as the

15   object of the claim is important.  The pleadings are consistent with the possibility

16   that the plaintiffs are claiming that certain "counterfeit" or "knockoff" websites

17   provide *their own* photographs of *their wedding dresses,* not reproductions of *the*

18   *plaintiffs' photographs*.

19          Dresses, like other clothing, "are useful articles for the purposes of the

20   Copyright Act and thus are not typically copyrightable."  *Elastic Wonder, Inc. v.*

21   *Posey*, 179 F. Supp. 3d 307, 316 (S.D.N.Y. 2016) (collecting cases).  Unlike images

22   and other "pictorial, graphic, and sculptural works," the Act sharply limits

23   copyright protection for "the design of a useful article."  The Copyright Act

24   specifically excludes "useful articles" from the definition of "pictorial, graphic, and

25   sculptural works" that enjoy copyright protection.  *See* 17 U.S.C. § 101 (definition

26   of "pictorial, graphic, and sculptural works"); 17 U.S.C. § 102(a)(5)(copyright

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    protection for pictorial, graphic, and sculptural works).[9]

2        Moreover, where a person offers for sale "a work lawfully reproduced in

3    useful articles," the Act provides that "copyright does not include any right to

4    prevent the making, distribution, or display of pictures or photographs of such

5    articles in connection with advertisements or commentaries related to the

6    distribution or display of such articles . . . ."  17 U.S.C. § 113(c).  Because the

7    complaint suggests that images of the alleged counterfeiters' "knockoff" goods are

8    the object of the lawsuit and contains no clear and plausible allegations that images

9    associated with sale of the knockoffs infringe upon the plaintiffs' images, the

10   complaint suggests facts that are inconsistent with copyright protection under

11   sections 102(a)(5) and 101 of the Act, and it also pleads a defense under section

12   113(c) to any presumed underlying direct infringement.[10]

13       Because the plaintiffs fail to allege any instance of direct infringement on

14   which to base the contributory infringement claim against Cloudflare, and they

15   appear to suggest facts inconsistent with it, the Court may also grant Cloudflare's

16   motion and dismiss the action on that basis.

17   [9] While useful articles are themselves unprotectable, the U.S. Supreme Court
     recently held that a "feature" of "the design of a useful article" is protectable but
18   "only if the feature (1) can be perceived as a two- or three-dimensional work of art
     separate from the useful article and (2) would qualify as a protectable pictorial,
19   graphic, or sculptural work" itself.  *Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
     137 S. Ct. 1002, 1007 (2017).  The complaint does not allege any protectable
20   features of the plaintiffs' apparel.

21   [10] To the extent that the plaintiffs seek to use photographs to enforce claims in their
22   fashion designs, the tactic is improper and may furnish a basis for a copyright
     misuse defense.  "Copyright misuse is an affirmative defense that 'prevents
23   copyright holders from leveraging their limited monopoly to allow them control of
     areas outside the monopoly.'"  *Disney Enters., Inc. v. Redbox Automated Retail,*
24   *LLC*, No. CV 17-08655 DDP(AGRx), 2018 WL 1942139, at *6 (C.D. Cal. Feb. 20,
     2018) (quoting *Napster*, 239 F.3d at 1026) (using copyright in works to restrict
25   secondary transfers of physical copies constituted copyright misuse);  *Omega S.A.*
     *v. Costco Wholesale Corp.*, 776 F.3d 692, 699-706 (9th Cir. 2015) (Wardlaw, J.
26   concurring) (discussing copyright misuse as alternate basis for affirmance, where
27   luxury watch manufacturer attempted to use copyright to control importation and
28   resale of watches legitimately purchased abroad).

FENWICK & WEST LLP
ATTORNEYS AT LAW

## V.    CONCLUSION

Because the plaintiffs have incurably failed to allege facts to support either strand of contributory infringement liability, have failed to allege any underlying direct infringement adequately, and appear to have alleged facts inconsistent with underlying direct infringements, the Court should grant Cloudflare's motion and dismiss the action with prejudice.

Dated: January 16, 2019                    FENWICK & WEST LLP


                                           By:/s/ Andrew P. Bridges
                                                Andrew P. Bridges

                                           Attorneys for Defendant
                                           CLOUDFLARE, INC.